Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| HACIENDA SAN JOSÉ HOMEOWNERS ASSOCIATION, INC.<br><br>Apelada<br><br>v.<br><br>RENÉ DE LEÓN TORO; BRENDA L. CORDERO ACABÁ; ambos por sí y en representación de la Sociedad Legal de Gananciales entre ellos compuesta<br><br>Apelantes | KLAN202400645 | *Apelación*<br>Procedente del Tribunal de Primera Instancia, Sala de CAGUAS<br><br>Caso Núm.:<br>CG2023CV02478<br><br>Sobre:<br>Cobro de Dinero; Regla 60 |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de agosto de 2024.

El 8 de julio de 2024, René De León y Brenda L. Cordero Acabá (en adelante los apelantes) instaron el recurso de apelación de epígrafe para solicitarnos la revocación de la *Sentencia Sumaria* dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI o foro primario). Mediante el aludido dictamen, el TPI declaró Con Lugar la Demanda instada por Hacienda San José Homeowners Association, Inc., contra los apelantes condenándole a pagar la suma de $4,012.30.

Examinados los planteamientos sometidos por la apelante y con el beneficio de la comparecencia de ambas partes, resolvemos **confirmar** el dictamen apelado.

**-I-**

El 21 de julio de 2023, Hacienda San José Homeowners Association, Inc. (en adelante, la parte apelada) sometió una *Demanda* en cobro de dinero al amparo de la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V R. 60. Allí,

Número Identificador

SEN2024 _____

alegó que la parte apelante era dueña de una propiedad en la Urbanización Hacienda San José y que al 10 de julio de 2023, adeudada la suma de $1,883.39 en concepto de cuotas de mantenimiento, derramas y gastos extraordinarios operacionales del sistema de acceso controlado, seguridad y mantenimiento de áreas vecinales.

El 12 de septiembre de 2023, la parte apelante contestó la *Demanda*. Al así hacerlo, negó adeudar la suma reclamada y cualquier otra con cuotas establecidas. De otra parte, afirmativamente alegó que no procedía la imposición de intereses y penalidades y que la parte apelada reclamó partidas, cargos y/o penalidades improcedentes y/o contrarias a Derecho. Además, solicitó que la causa de acción se tramitara por el trámite ordinario. En cuanto a esto último, mediante *Moción Uniéndonos a Representación Legal y en Cumplimiento de Orden* se informó que la parte apelada no tenía inconveniente en que el caso se atendiera vía el procedimiento ordinario.

Así las cosas, luego de varios trámites, la parte apelada presentó *Moción de Sentencia Sumaria de la Demandante* en la que propuso que conforme los documentos que acompañaban su escrito demostraban, no existía controversia en cuanto a los siguientes hechos:

1. El demandado es propietario de la propiedad localizada en la URB: LA ESTANCIA HACIENDA SAN JOSE 79 VIA PLACIDA, CAGUAS, P.R. (Véase párrafo 2do de la contestación a la demanda.)

2. Que Hacienda San José Homeowners Association, Inc. es una corporación sin fines de lucro, debidamente registrada ante el Departamento de Estado de Puerto Rico bajo el número 35453 desde el 20 de octubre de 2000. (**Exhibit I Certificado de Incorporación y Exhibit II Certificado de Existencia).**

3. Que HSJ es una comunidad residencial planificada con control de acceso, áreas comunes y gobernada por restricciones y servidumbres que surgen de la Escritura Pública número 335, *Deed of Establishment of Master Association*, **(Exhibit III Escritura 335 de Condiciones Restrictivas o Servidumbres en Equidad[)]** otorgada el 25 de septiembre de 2000 ante la Notario Estela I Valles Acosta.

4. Que Levitt en el párrafo SEXTO de la Escritura de Servidumbre creo la HSJHOA de la siguiente manera:

SEXTO: LEVITT desea proveer para la preservación de los valores y amenidades en la comunidad del DESARROLLO HACIENDA SAN JOSE y para el mantenimiento de las Propiedades Comunales Generales, y. con este fin, desea someter las propiedades junto con cualquier adición (como provisto en el Articulo 11) a los convenios, restricciones, servidumbres, cargas y gravámenes, en adelante establecidos, todos para el beneficio de las propiedades y sus dueños. LEVITT considera que para la eficiente preservación de los valores y amenidades en la comunidad del DESARROLLO HACIENDA SAN JOSE, **se debe crear una agencia a la que se le delegará y asignará los poderes de mantener y administrar las Propiedades Comunales Generales, administrar y ejecutar los convenios y restricciones, y recoger y distribuir las cuotas y cargos, en adelante establecidos.** LEVIIT ha establecido **la incorporación de la HACIENDA SAN JOSE HOMEOWNERS ASSOCIATION, INC. como una corporación sin fines de lucro bajo las leyes del Estado Libre Asociado de Puerto Rico para el propósito de ejercer las funciones en adelante establecidas.** LEVIIT establece que las Propiedades y adiciones hechas de acuerdo con el Artículo II, aquí establecido, son y serán, transferidas, vendidas, cedidas, y ocupadas sujeto a los convenios, restricciones, servidumbres, cargas y gravámenes (algunas veces denominados como "Convenio y Restricciones ") en adelante establecidos.

[5]. El demandado viene obligado al pago de cuotas conforme al artículo V de la Escritura 335, A saber:

ARTICULO V. Convenio para Cuota de Mantenimiento. –

---Sección 1. Creación de Gravamen y Obligación Personal de Cuotas. Cada Dueño de un Solar o Unidad de Vivienda que es un miembro Clase A por aceptación de escritura, independientemente de si está expresamente indicado en dicha escritura, se obliga a pagarle a la Asociación; (1) cuotas anuales; (2) cuotas especiales por mejoras capitales, como cuotas a ser fijadas, establecidas y recaudadas de tiempo en tiempo como aquí en adelante provisto. Las cuotas anuales y especiales junto con los intereses y costos de recaudación serán cargadas contra el terreno y serán un gravamen continuo contra la propiedad que debe dicha cuota. Toda cuota junto con los intereses y costos de recaudación aquí establecidos también serán una obligación personal para la persona Dueña de dicha propiedad al momento la cuota sea pagadera. (Véase Escritura 335 que se incluye como Exhibit III)

[6.] El ARTICULO V, Sección 7 de la referida escritura de servidumbres dispone en su parte pertinente.

Sección 7. Efecto del No- Pago de Cuotas; La Obligación Personal del Dueño; El Gravamen; Remedios de La Asociación. Si cualquier -cuota no es pagada a la fecha de vencimiento (estando las fechas indicada en la Sección 5, aquí especificada) dicha cuota se toma delincuente y se convert1rá, junto con los intereses y costos de recaudación, en un gravamen continuo de la propiedad que obliga a dicha propiedad ya éste esta en las manos del dueño, sus herederos legatarios, representantes personales o asignados. No obstante, la obligación personal del Dueño de pagar dicha cuota permanece como una obligación personal por el periodo estatutario y no pasará a sus sucesores en título a menos que expresamente estos la asuman.

-----Si la cuota se recibe por la Asociación después de los primeros quince días de cualquier [m]es (fecha de delincuencia), la cuota tendrá un cargo de tres (3%) por ciento de penalidad del monto de la cuota adeudada. Además, si la cuota no se paga dentro de (30) días después de dicha fecha de delincuencia, la cuota tendrá intereses desde la fecha de delincuencia de un doce (12%) por ciento por año, o la tasa más alta de interés permitida por ley, cualquiera que sea menor, y la Asociación puede llevar una acción legal contra el dueño personalmente obligado a pagar la misma o ejecutar la hipoteca en contra de la propiedad, y los costos de preparar y radicar la demanda de dicha acción se le añadirán al monto de la cuota, y en la eventualidad de obtener sentencia dicha sentencia deberá incluir los intereses a la cuota como propuesto anteriormente y una cantidad razonable para cubrir gastos de abogado que será fijado por la corte junto con los costos de dicha acción.

[7.] El demandado adeuda a SJHOA a la fecha del mes de marzo de 2024 la suma de $3,845.17 y dicha cuota aumenta mensualmente a razón de $155.00 **(Véase Declaración Jurada del de de 2024 que se incluye como Exhibit IV)(Véase como Exhibit V Estado** de cuenta del mes de marzo de 2024)

[8.] Que la cuota mensual de mantenimiento lo es la suma de $155.00 mensuales. Así ha sido admitido por las mociones de consignación del demandado desde el mes de diciembre de 2023. (SUMAC# 14,16 y 19)

[9.] Que los demandados han sido demandados por la demandante en al menos 3 ocasiones distintas, habiendo obtenido sentencias contra la demandada, lo que constituye cosa juzgada en cuanto a las alegaciones de que los cargos y penalidades son contrarias a derecho y no pactadas por los demandados en contrato alguno.(Véase Exhibit VI Demanda en Caso EACI201103638; Exhibit VII, Estipulación Sobre Sentencia Por Transacción firmada por la misma representación legal de demandada en este caso; y VIII La Sentencia Dictada) .(Véase Exhibit IX Demanda en Caso EACI201701517 y Exhibit X Sentencia Enmendada) .(Finalmente Véase Exhibit XI Demanda en Caso EACI201600914 y Exhibit XII Sentencia)

[10.] Que todas las demandas referidas en el inciso anterior incluían interés y penalidades incluidas en la escritura 335 antes citada. (Véase demandas incluidas como Exhibits VI, IX y XI)

11. Que el demandado ha venido consignando los pagos de cuotas de Mantenimiento a Hacienda San José Homeowners Association, Inc. Desde diciembre de 2023 hasta el presente por la suma de $155.00 correspondiente a la cuota mensual de mantenimiento impuesta por la demandante. (SUMAC# 14, 16 y 19)

Ante estos hechos, y el derecho aplicable en su escrito consignado, la parte apelada expuso que no quedaba duda alguna sobre la obligación de la parte demandada (apelante) al pago de la deuda reclamada, por lo que procedía dictarse sentencia en su contra. La parte apelante, al oponerse a

este escrito estableció que no existía controversia sobre el lenguaje contenido en la escritura de servidumbre. Ahora, negó que la parte apelada tuviera la facultad legal para reclamar en cobro los gastos identificados en las facturas como "Association Expenses" and "Tramit Expenses". Ello así pues en la escritura de servidumbre[1] no se autorizó el cobro de gastos como los identificados en la oración anterior.

Tras varios trámites procesales, el 6 de junio de 2024, el TPI emitió la *Sentencia Sumaria* apelada. Allí, formuló las siguientes determinaciones de hecho:

DETERMINACIONES DE HECHO

Los demandados son dueños del inmueble cuya dirección física es Urb. Hacienda San José 860, Sección La Estancia, Vía Plácida, y la cual consta la finca número 56,837 de la Sección Primera del Registro de la Propiedad de Caguas, con la siguiente descripción registral:

Número de Catastro --- Urbana: Urbanización Hacienda San José – La Estancia de Caguas. Solar 79-LE. Cabida: 419.29 metros cuadrados. Linderos: Norte, en 1.22 metros, 8.00 metros y 6.64 metros con los solares 90 y 91. Sur, en una distancia en arco de 17.55 metros con Calle Vía Plácida (Calle Número 4). Este, en 13.47 metros, 3.20 metros y 11.70 metros, con solar número 78. Oeste, en 13.32 metros, 3.20 metros y 11.70 metros con solar número 80. En dicho solar enclava una casa de concreto para una familia. Es segregación de la finca número 56,613, inscrita al folio 202 del tomo 1682 de Caguas.

Dicha propiedad, por su procedencia, se encuentra afecta a varias cargas, de la cual nos compete una: el que se encuentra afecta a **Condiciones Restrictivas de Uso y Edificación**, las cuales se encuentran recogidas en la Escritura 335 del 25 de septiembre del 2000 ante la Notario Estela Valdés Acosta ´Estableciendo la Asociación Matriz, Declaración de Convenios y Restricciones de Desarrollo de la Hacienda San José´ (en adelante, Escritura Matriz).

La parte demandante, Hacienda San José Homeowners Association, Inc., es la entidad facultada por la Escritura Matriz para, en grandes rasgos, velar por el bienestar del desarrollo del complejo de viviendas Hacienda San José en Caguas (en adelante, la Propiedad), lo cual compone varias facultades todas encaminadas a la funcionalidad y bienestar de la convivencia en dicho desarrollo.

Hacienda San José Homeowners Association, Inc. tiene la facultad de establecer los cargos que recaerán sobre la Propiedad, y se financiará con el pago de cuotas anuales **y cargos especiales** a sus miembros en las cantidades y temporalidad establecida en el

---

[1] Escritura Número 335, "*Deed of Establishment of Master Association*".

reglamento de la corporación o escritura matriz … y por contribuciones del público general a la corporación.

La Escritura Matriz de Hacienda San José le confiere a, Hacienda San José Homeowners Association, Inc. el derecho de cargar una cantidad razonable de admisión o (sic) otras cantidades por el uso de las propiedades comunales regionales.

La Escritura Matriz de Hacienda San José Homeowners Association, Inc. dispone que "cada dueño de un solar o unidad de vivienda que es un miembro clase A por aceptación de escritura, independientemente de si está expresamente indicado en dicha escritura, se obliga a pagarle a la Asociación; (1) cuotas anuales; (2) cuotas especiales por mejoras capitales, como cuotas a ser fijadas, establecidas y recaudadas de tiempo en tiempo como aquí en adelante provisto. Las cuotas anuales y especiales, junto con los intereses y costos de la recaudación, serán cargadas contra el terreno y serán un gravamen continuo contra la propiedad que debe dicha cuota. Toda cuota junto con los intereses y costos de recaudación aquí establecidos también serán una obligación personal para la persona dueña de dicha propiedad en el momento que la cuota sea pagadera."

Dispone la Escritura Matriz, en su Artículo V, sección 7, que "si cualquier cuota no es pagada a la fecha de vencimiento, dicha cuota se torna delincuente y se convertirá, **junto con los intereses y costos de recaudación**, en un gravamen continuo de la propiedad que obliga a dicha propiedad ya esté en manos del dueño, sus herederos, legatarios, representantes personales o asignados."

Igualmente dispone la Escritura Matriz en su Artículo V, sección 7 que si la cuota se recibe por la Asociación después de los primeros quince días de cualquier mes (fecha de delincuencia), **la cuota tendrá un cargo de tres (3%) porciento de penalidad del monto de la cuota adeudada**. Además, si la cuota no se paga dentro de 30 días después de dicha fecha de delincuencia, **la cuota tendrá intereses desde la fecha de la delincuencia de un doce (12%) por ciento por año, o la taza (sic) más alta de interés permitida por ley, cualquiera que sea menor**, y la Asociación puede llevar una acción legal contra el dueño personalmente obligado a pagar la misma o a ejecutar la hipoteca en contra de la propiedad, y **los costos de preparar y radicar la demanda de dicha acción se le añadirán al monto de la cuota, y en la eventualidad de obtener sentencia dicha sentencia deberá incluir los intereses a la cuota como propuesto anteriormente y una cantidad razonable para cubrir gastos de abogado que será fijado por la corte junto con los costos de dicha acción.´**

Dispone la Escritura Matriz en su Artículo VI, sección 5, que "Las multas constituirán una cuota adeudada a la Asociación y el no pagar dicha multa dentro del término prescrito se tornará en una cuota especial como provisto en el Artículo V. "

En virtud de tales determinaciones, el foro primario concluyó que la parte apelada tenía la facultad de cobrar las cuotas regulares establecidas de tiempo en tiempo por ella, así como cuotas especiales, intereses por mora, cargos por delincuencia, costas de cobro y honorarios de abogado según impuesto por los tribunales. Consecuentemente, dictó sentencia

sumaria contra los apelantes por la cantidad de $3,849.82, más $465.00 correspondientes a los meses de abril, mayo y junio de 2024, $130.00 en costas y gastos incurridos en la promoción de la causa, $500.00 en honorarios de abogado, menos la cantidad que los apelantes han consignado- ascendente a $932.52-, para un total de $4,012.30.

En desacuerdo con lo resuelto, los apelantes instaron el recurso de epígrafe y le atribuyeron error al TPI al:

> […] resolver la sentencia sumaria a favor de la parte demandante-apelada, contrario al estado de Derecho ya resuelto por este Honorable Foro Apelativo (TA).
>
> […] determinar que la parte demandante-apelada tiene facultad según escritura matriz para cobrar aquellas cantidades identificadas como "Association Expenses", a pesar de ser contrario a Derecho.
>
> […] dictar sentencia a favor de la parte demandante-apelada y no resolver la solicitud de sentencia sumaria a favor de la parte demandada-apelante, según el caso de Hacienda San José Homeowners Assoc. vs. Ángel Ramos Hernández, KLAN201300491; E AC2012-01072.

Atendido el recurso, el 11 de julio del año en curso emitimos *Resolución* ordenándole a la parte apelada a someter su posición. En cumplimiento con ello, el 31 de julio de 2024 esta compareció mediante *Alegato en Oposición a Escrito de Apelación* en el que plantea que los apelantes no pueden alegar que no existe base para los costos de recaudación cuando estos se establecen claramente en la Ley de Control de Acceso y en las escrituras de servidumbres en equidad que gravan su propiedad. A su vez, a modo de refutación, cita una sentencia dictada por un panel hermano de este Tribunal en la que se resolvió distinto a la jurisprudencia citada por los apelantes en sus señalamientos de error.

Habiendo comparecido todas las partes, damos por sometido el asunto y resolvemos.

-II-

*A.*

El mecanismo procesal de la sentencia sumaria dispuesto en la Regla 36 de Procedimiento Civil, 32 LPRA, Ap. V., R. 36, permite resolver los asuntos de aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, no ameritan la celebración de un juicio. Cruz Velez v. CEE y otros, 206 DPR 694 (2021), al citar a Mejías et al. v. Carrasquillo et al., 185 DPR 288 (2012) y otros. Así pues, conforme la discutida regla, procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, más las declaraciones juradas y cualquier otra evidencia presentada se acredita la inexistencia de una controversia real y sustancial sobre algún hecho esencial y material. Deberá, también, justificarse por el derecho aplicable. Id., mencionando a Bobé et al. v. UBS Financial Services, 198 DPR 6 (2017) y demás.

Por otro lado, la parte que se oponga a la moción de sentencia sumaria, deberá así hacerlo dentro del término de veinte (20) días desde su notificación, cumpliendo con los requisitos de ley. Así pues, deberá efectuar una exposición breve de las alegaciones, los asuntos litigiosos o en controversia. También, deberá hacer referencia a los párrafos enumerados por la parte promovente que entiende están en controversia y para cada uno, detallar la evidencia admisible que sostiene su impugnación. Véase, Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b); Cruz Velez v. CEE y otros; *supra*; y SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 432 (2013). Las meras afirmaciones no bastan. Meléndez González et al.v. M. Cuebas, 193 DPR 100, 136 (2015). Esto es así, ya que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una que permita concluir la existencia de una controversia real y sustancial sobre hechos relevantes y pertinentes. Abrams Rivera v. ELA, 178 DPR 914, 932 (2010). No obstante, el no presentarse oposición a una moción

de sentencia sumaria no impide que el tribunal falle en contra del promovente de esta ya que esta "puede dictarse a favor o en contra del promovente, según proceda en derecho.". <u>Audiovisual Lang. v. Sist. Est. Natal Hnos.</u>, 144 DPR 563, 575 (1997).

Así, al evaluar los méritos de una solicitud de sentencia sumaria un tribunal podrá dictar sentencia sumaria si de los documentos sometidos ante su consideración surge que no existe controversia real sustancial en cuanto a ningún hecho material y solo restaría por resolver una controversia estricta de derecho. Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V R 36.3(e). Por el contrario, no procederá una moción de sentencia sumaria cuando (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. <u>Cruz Vélez v. CEE y otros</u>; *supra.*

En cuanto a la revisión judicial de una determinación sobre sentencia sumaria, es meritorio señalar que los foros apelativos nos encontramos en la misma posición que el foro primario. Por ello, debemos regirnos por la Regla 36 de Procedimiento Civil y aplicar los criterios de esta. No obstante, no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI. Tampoco podemos adjudicar los hechos materiales en controversia, por ser una tarea que le compete al foro de instancia luego de celebrarse un juicio. <u>Meléndez González et al. v. M. Cuebas</u>, *supra,* pág. 118.

-III-

Tratándose el asunto ante nuestra consideración sobre la disposición sumaria de un pleito, según nos ordena la jurisprudencia, hemos evaluamos primeramente la solicitud de sentencia sumaria sometida por los apelantes, así como la oposición presentada por la parte apelada.

Realizado este ejercicio, concluimos que estos escritos cumplen con los requisitos de forma que exige nuestro ordenamiento jurídico en cuanto a dicha herramienta.

Habiéndose determinado lo anterior, nos corresponde evaluar *de novo* si quedó demostrado la inexistencia de hechos medulares a la controversia, de forma tal que evaluemos si la resolución sumaria del caso estaba permitida. Efectuada esta tarea, concluimos que los hechos materiales y esenciales del presente caso propuestos por la parte apelada en su moción de sentencia, y esencialmente acogidos por el foro primario, no están en controversia. Nos resta pues, determinar si la aplicación del derecho efectuada por el foro primario fue una adecuada.

Los apelantes en su recurso proponen que no. Así, al discutir de forma conjunta sus 3 señalamientos de error, reproducen los argumentos levantados ante el foro primario y niegan la autoridad legal de la parte apelada para establecer y cobrar el cargo de "association expenses". Específicamente, argumentan que la controversia ante el foro primario ya había sido adjudicada por este Tribunal de Apelaciones cuando al resolver el caso Hacienda San José v. Ángel Ramos Hernández- KLAN201300491, estableció que los cargos relacionados a la cobranza no son, ni fueron parte de la escritura de servidumbre, por lo que no pueden ser cobrados. Asimismo, niegan cualquier aplicación que la parte apelada hizo sobre la doctrina de cosa juzgada cuando sostuvo frente al foro primario que los apelantes no podían negar la aplicación de los cargos, cuando en pleitos previos en cobro de dinero llegaron a acuerdos en los que tales cargos fueron aceptados por estos.

De entrada, es meritorio aclarar que, si bien es cierto que las sentencias emitidas por este Tribunal de Apelaciones, de conformidad con la Regla 11 de nuestro Reglamento[2], pueden ser citadas con carácter

---

[2] 4 LPRA Ap. XXII-B, R. 11.

persuasivo, las mismas no sientan precedente ni normativa aplicable. Por tanto, si bien se persigue mantener la uniformidad en las decisiones que este Tribunal alcanza, las sentencias aquí emitidas no son una directriz absoluta que nos obligue a resolver de la misma forma que resolvió un distinto Panel.

Aclarado lo anterior, tras evaluar el legajo apelativo, resolvemos que la aplicación del derecho efectuada por el foro primario fue adecuada. Como surge de las expresiones del foro primario transcritas más arriba, y fue correctamente señalado por este, la escritura matriz establece, entre otras cosas, que "si cualquier cuota no es pagada a la fecha de vencimiento, dicha cuota se torna delincuente y se convertirá junto con los intereses **y costos de recaudación**, en un gravamen continuo de la propiedad que obliga a dicha propiedad, ya esté en manos del dueño, sus herederos, legatarios, representantes personales o asignados.

Los argumentos de los apelantes no refutan de forma alguna este hecho. Por el contrario, se limitan a dar por sentado que debido a que un Panel hermano decidió de una manera al atender una controversia similar, estamos obligados a resolver de igual forma. En el pleito quedó demostrado que la escritura matriz contempla ante el incumplimiento con el pago de las cuotas de mantenimiento que la deuda, los intereses y costos de recaudación se tornen en gravámenes continuos. Entonces, fue correcta la determinación del foro primario de resolver sumariamente el pleito y declarar Con Lugar la *Demanda*. Por esta razón, la *Sentencia* apelada debe confirmarse.

-IV-

Por los fundamentos antes expuestos, confirmamos la *Sentencia Sumaria* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones